### 69930. THE STATE v. GILCHRIST.
(330 SE2d 430)

DEEN, Presiding Judge.

A Clayton County police officer routinely patrolling along Highway 85 observed a Lincoln automobile turn off the highway into the parking lot of a free-standing liquor store, just as he himself was preparing to drive into the parking lot by another entrance. As he circled the building, the officer heard someone shout, "He just hit the van!" He then saw ahead of him a van (the only vehicle parked on the lot), with the Lincoln resting against it. When appellee Gilchrist emerged from the Lincoln, the officer asked him for his driver's license and proof of insurance. Gilchrist, the car's sole occupant, replied that he had no insurance but produced a driver's license bearing the name "Jackie K. Russell." A computer check revealed that the driver's license had been suspended and that the Lincoln's license tag had been issued to another vehicle. Appellee was then placed under arrest.

The officer asked appellee whether there was anyone nearby who could take custody of the Lincoln and was given several telephone numbers. When calls to these numbers produced no response, appel-

lee told the officer that a friend in Tifton could come and get the car; the officer informed him that he could not wait for someone to come from that distance. The irate van owner, who was also proprietor of the liquor store, asked that the Lincoln be left on his parking lot as security for the damage to his van, but the officer declined the offer and ordered the car impounded. A second police officer, who had been called to assist the arresting officer, made an inventory of the Lincoln and discovered in the rear of the passenger compartment a large quantity of controlled substances in the form of powder and tablets, together with scales, a spoon, and a strainer.

Gilchrist moved to suppress this evidence as having been seized in violation of rights conferred by the constitutions of the United States and Georgia, and the trial court granted the motion. The state appeals, contending that the search of the Lincoln was justified both as a search incident to arrest and as a valid inventory search conducted pursuant to the arresting officer's decision to impound the vehicle. *Held*:

1. It is well settled that a police officer is authorized to make an inventory of the contents of a vehicle that has been impounded. "Inventory searches have been upheld because they serve three legitimate interests: (1) protection of the property while in custody; (2) protection of the police from potential dangers; and (3) protection of the police against claims of lost or stolen property. *South Dakota v. Opperman*, 428 U. S. 364 (96 SC 3092, 49 LE2d 1000) (1976); *State v. Darabaris*, 159 Ga. App. 121 (282 SE2d 744) (1981)." *Strobhert v. State*, 165 Ga. App. 515 (301 SE2d 681) (1983). Such authorization, of course, presumes the validity of the impoundment. *State v. McCranie*, 137 Ga. App. 369 (223 SE2d 765) (1976).

In the instant case the arresting officer, before ordering that the Lincoln be impounded, attempted to find a prudent alternative to impoundment. He undertook to try to reach someone at the local telephone numbers provided by appellee but was unable to get an answer. We cannot say as a matter of law that he acted imprudently in rejecting the remaining alternatives; namely, either leaving the vehicle in the custody of the proprietor (who was previously unknown to him), or waiting for the automobile to be picked up by the person from Tifton, who (even if he could have been reached immediately by telephone) would have required at least two hours to travel the distance. To have chosen either of these two alternatives would have been to incur the risk of theft of the auto or its contents, or damage to either or both, and, further, would have potentially exposed the police officers to accusations of theft or misappropriation of the arrestee's property. Thus the officer's decision to impound the car was well within the parameters of those decisions which have upheld the validity of an inventory search in fact situations closely similar to that of

the instant case. See, e.g., *State v. Hopkins*, 163 Ga. App. 141 (293 SE2d 529) (1982); *State v. Holden*, 162 Ga. App. 33 (290 SE2d 130) (1982). These cases are readily distinguishable from the cases relied on by appellee, such as *State v. Ludvicek*, 147 Ga. App. 784 (250 SE2d 503) (1978) (both the owner of the borrowed vehicle and another friend of the arrestee were available to take custody of the car, but the officer made no attempt to contact either); or *Strobhert v. State*, supra at 516 (the arresting officer "had not asked about nor given appellant the opportunity to make alternative arrangements for the removal of the vehicle").

We find that this case is controlled adversely to appellee's position by *Mooney v. State*, 243 Ga. 373 (254 SE2d 337) (1979), and *Hansen v. State*, 168 Ga. App. 304 (308 SE2d 643) (1983). In *Mooney* the appellants contended that, because they had paid several days' advance rent for the motel room in which they were arrested, their automobile should have been left in the motel's parking lot instead of being impounded. The court held, at 380, that under such circumstances it was reasonable for the police to search any container (including an automobile) in their custody, in order to itemize the property to be held. The court went on to point out that the only searches prohibited by the Constitution are unreasonable searches. In *Hansen* an inventory search disclosed burglar tools in the automobile whose occupants (both of whom disclaimed ownership of the vehicle) had been stopped for loitering in an apartment parking lot. *Hansen* held, at 306, that when a vehicle's occupants have been arrested and there is no one available to take custody, impoundment and the resultant inventory are proper. As the Supreme Court held in *Mooney*, supra at 375: "It is well established that a police seizure and inventory is not dependent for its validity upon the absolute necessity for the police to take charge of property to preserve it. They are permitted to take charge of property under broader circumstances than that."

We are cognizant of the principle that the judgment of the trial court is not to be disturbed absent plain error, and that assessment of the prudence of the police officer's decision to impound a vehicle is ordinarily within the province of the trial court. See, e.g., *Meneghan v. State*, 132 Ga. App. 380 (280 SE2d 150) (1974). In the instant case, however, it is apparent that the trial court did not give full consideration, in the light of relevant case law, to all the circumstances which led the police officer to conclude that impoundment of the vehicle was the only feasible course of action.

2. It is equally well settled that a police officer is authorized, as an incident to a lawful arrest, to search the suspect's person and the immediately surrounding area. *Chimel v. California*, 395 U. S. 752 (89 SC 2034, 23 LE2d 685) (1969); *Smallwood v. State*, 166 Ga. App. 247 (304 SE2d 95) (1983); *Watkins v. State*, 160 Ga. App. 9 (285

SE2d 758) (1981). The area immediately surrounding the arrestee has been expressly held to include "the passenger compartment of the automobile in which he was riding." *New York v. Belton*, 453 U. S. 454 (101 SC 2860, 69 LE2d 768) (1981); *State v. Hopkins*, supra.

It is undisputed that appellee had occupied the Lincoln immediately prior to his arrest. Therefore, the inventory search was authorized both as a search of a properly impounded vehicle, and as a search incident to lawful arrest. We conclude that none of appellee's constitutional rights was violated by the inventory search, and that the court below erred in ruling that the evidence obtained in the course thereof should have been suppressed.

*Judgment reversed. Pope and Beasley, JJ., concur.*

DECIDED APRIL 8, 1985.

*Robert E. Keller, District Attorney, David C. Marshall, Assistant District Attorney*, for appellant.

*William E. Frey*, for appellee.