**THIRD DIVISION**
**DOYLE, P. J.,**
**MARKLE and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**

**https://www.gaappeals.us/rules**

**June 11, 2025**

# In the Court of Appeals of Georgia

A25A0556. EDOUARD v. THE STATE.

DOYLE, Presiding Judge.

Following a bench trial, Sebastian Edouard was convicted of attempted armed robbery and aggravated assault. After his motion for new trial was denied, Edouard filed this appeal, in which he contends (1) that the evidence was insufficient to sustain the convictions, and (2) that the trial court erred by failing to merge his conviction for aggravated assault with his conviction for attempted armed robbery. For the reasons that follow, we affirm in part, vacate in part, and remand for resentencing.

Viewed in favor of the verdict,[1] the evidence presented at trial shows that on

---

[1] See *Ford v. State*, 370 Ga. App. 414, 414 (897 SE2d 621) (2024) ("On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence.").

September 20, 2022, Chandler Hall was at his home with his friend, Brienna Piedra, when Edouard texted Hall, asking to purchase marijuana.[2] Hall agreed to sell Edouard marijuana and drove with Piedra to a nearby parking lot to meet Edouard. Edouard arrived in a vehicle driven by Hunter Haifley and containing Ahmeze Hardin and Akym Laroche. Haifley parked several spaces away from Hall, who remained in his vehicle.

Edouard exited the vehicle, approached Hall, and asked to look at the marijuana. Edouard stated that he had no money but asked whether Hall would accept cash, which Hall found suspicious. Ostensibly to get cash, Edouard went back to his vehicle and returned to Hall with Hardin, who asked to see the marijuana. Hardin then pressed a gun to Hall's head, and Edouard said, "We don't want no trouble." Hall reached for his gun, whereupon Hardin shot him in the leg.

Hall jumped into the back seat of his vehicle and directed Piedra to drive back to his home, where he called 911. Meanwhile, Edouard ran and got back into his vehicle, which Haifley began to drive out of the neighborhood. Before leaving the neighborhood, Edouard and Haifley called for Hardin, who appeared and reentered the vehicle. As Edouard and his companions were driving away, Hardin admitted to

---

[2] Edouard previously had arranged a separate purchase of marijuana from Hall using the same phone number.

shooting Hall and said that Hall "shouldn't have reached." Laroche later advised Haifley to "lay low" and not drive the vehicle involved in the shooting.

Officers responded to Hall's residence, where they found Hall lying in the garage with a gunshot wound to his right thigh. As the officers rendered first aid, Hall told them that he had been shot in a nearby parking lot while attempting to sell marijuana to a person to whom he previously had sold marijuana. Hall gave the officers his phone and allowed them to view his text communications with Edouard. Marijuana was found on the floorboard of Hall's vehicle.

As the investigation proceeded, law enforcement learned of an address associated with Edouard from viewing Hall's text communications with him. Officers made contact with Edouard at this address and spoke with him about the shooting. Edouard admitted to attempting to purchase marijuana from a drug dealer on the date in question but stated that the transaction did not go forward because the dealer never arrived. Officers seized Edouard's phone and searched it pursuant to a warrant.[3] The search revealed communications indicating that Haifley, Laroche, and Hardin were involved in the incident.

In particular, law enforcement discovered a text conversation between Edouard

---

[3] Before his phone was seized, Edouard had blocked Hall's phone number and deleted his text communications with Hall.

and Laroche from a few hours before the shooting in which they expressed that they wanted to get some marijuana but did not have enough money to purchase it. Shortly before the shooting, Edouard suggested to Laroche that they could "hit a lick" on a "bitch ass plug," referring to robbing a nonthreatening drug dealer. When Laroche stated that he had no such contacts, Edouard indicated that he had a target in mind and was arranging a transaction with him but would need a mask. At the same time, Edouard was texting and calling Hall to set up the drug deal that culminated in Hall's shooting.

Edouard was charged with and found guilty of attempted armed robbery (Count 1) and aggravated assault (Count 2) following a stipulated bench trial.[4] As to Count 1, he was sentenced to 20 years, with 10 years to serve in confinement and the remainder on probation. He received the same sentence as to Count 2, to run concurrent with Count 1. Edouard filed a motion for new trial, which he amended once. The trial court denied the motion, finding, among other things, that the evidence was sufficient to sustain Edouard's convictions. In particular, the trial court found that Edouard's text messages pointed directly to his planning and execution of the attempted armed robbery of Hall. Further, the trial court found that Hall's testimony that Edouard was

---

[4] Haifley, Hardin, and Laroche were jointly indicted with Edouard for the attempted armed robbery and aggravated assault of Hall. Edouard was tried alone.

one of the two people standing next to Hall's vehicle when the shooting occurred was credible and provided strong evidence of Edouard's guilt. Edouard now appeals.

1. In his first two related enumerations of error, Edouard contends that the evidence presented at trial was insufficient to support his convictions. We disagree.

When reviewing the sufficiency of evidence, we must "determine only whether, after viewing the evidence in the light most favorable to the prosecution, 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"[5] "Under this review, we must put aside any questions about conflicting evidence, the credibility of witnesses, or the weight of the evidence, leaving the resolution of such things to the discretion of the trier of fact."[6]

(a) *Attempted armed robbery*. "A person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon."[7] "A person commits the

---

[5] *Ford*, 370 Ga. App. at 414, quoting *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

[6] (Punctuation omitted.) *Mims v. State*, 304 Ga. 851, 853 (1) (a) (823 SE2d 325) (2019).

[7] OCGA § 16-8-41 (a).

offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime."[8] "Every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime."[9]

> A person is concerned in the commission of a crime only if he: (1) [d]irectly commits the crime; (2) [i]ntentionally causes some other person to commit the crime under such circumstances that the other person is not guilty of any crime either in fact or because of legal incapacity; (3) [i]ntentionally aids or abets in the commission of the crime; or (4) [i]ntentionally advises, encourages, hires, counsels, or procures another to commit the crime.[10]

"While mere presence at the scene of a crime is not sufficient evidence to convict one of being a party to a crime, criminal intent may be inferred from presence, companionship, and conduct before, during[,] and after the offense."[11]

In pertinent part, Count 1 of the indictment in this case alleges that Edouard, as a party to the crime, pointed a firearm at Hall while demanding his property, acts

---

[8] OCGA § 16-4-1.

[9] OCGA § 16-2-20 (a).

[10] (Punctuation omitted.) OCGA § 16-2-20 (b).

[11] (Punctuation omitted.) *Thomas v. State*, 300 Ga. 433, 436 (1) (796 SE2d 242) (2017).

which constitute a substantial step toward the commission of armed robbery. The trial evidence shows that although Edouard did not himself point the gun, he orchestrated, participated in, and afterwards tried to conceal his involvement in, the attempted armed robbery of Hall. Prior to the shooting, Edouard wanted marijuana but did not have enough money to purchase it. When he discussed this fact with Laroche, he suggested robbing Hall, from whom Edouard had bought marijuana before. That Edouard did not want Hall to recognize him is a reasonable inference from Edouard's statement to Laroche that he would need a mask during the planned robbery. Edouard set up a purported drug transaction with Hall while he discussed robbing him with Laroche. He then traveled in Haifley's car to meet Hall with Hardin, who had a gun. When Edouard approached Hall, he engaged in distracting behavior by stating that he had no money but inquiring whether Hall would accept cash. When he returned to Hall with Hardin, who pressed a gun to Hall's head after asking to see the marijuana, Edouard said, "We don't want no trouble." Edouard fled the scene with Hardin after Hardin shot Hall. He then blocked Hall's number, deleted his text communications with Hall, and told police that he never met with Hall on the date in question.

Nevertheless, Edouard argues that because there was no evidence of an explicit demand for property, the State failed to prove one of the essential elements of

7

attempted armed robbery. This argument fails.

The Supreme Court of Georgia considered and rejected the same argument in *Brown v. State*.[12] In *Brown*, the appellant was indicted as a party to the crime of attempted armed robbery based on pointing a gun at the victim and demanding his property.[13] The trial evidence showed that, although a gun was pointed at the victim, there was never a verbal demand for property.[14] The Supreme Court of Georgia, however, explained that this fact "could be established by both direct and circumstantial evidence."[15] In *Brown*, the evidence showed that the appellant had arranged the meeting with the victim and distracted him while her co-defendant approached with a firearm, the co-defendant held the victim at gunpoint and instructed him not to do anything, and after the incident the appellant and her co-defendant discussed the robbery being unsuccessful.[16] The Court held that such evidence permitted the factfinder to conclude that the actions of and circumstances created by the appellant and her co-defendant amounted to a demand for the victim's

---

[12] 307 Ga. 24, 27 (1) (834 SE2d 40) (2019).

[13] See id.

[14] See id.

[15] (Emphasis omitted.) Id.

[16] See id.

property, even absent a verbal request for the property.[17]

Likewise, here, the actions of and circumstances created by Edouard and Hardin were tantamount to a demand for Hall's property, notwithstanding the lack of an explicit request for it. Edouard arranged the meeting with Hall and distracted him while Hardin approached with a firearm. After asking to see the marijuana, Hardin held Hall at gunpoint, and Edouard discouraged Hall from taking responsive action by saying, "We don't want no trouble." Accordingly, the evidence authorized the factfinder to find Edouard guilty beyond a reasonable doubt as a party to the crime of attempted armed robbery.

(b) *Aggravated assault.* "A person commits the offense of aggravated assault when he or she assaults . . . [w]ith a deadly weapon[.]"[18] Count 2 of the indictment in this case alleges that Edouard, as a party to the crime, assaulted Hall with a firearm by shooting him in the leg. "[A] conviction as a party to a crime requires proof that the defendant shared a common criminal intent with the principal perpetrator of the

---

[17] See *Brown*, 307 Ga. at 27 (1), citing *Worthen v. State*, 304 Ga. 862, 867 (3) (c) (823 SE2d 291) (2019) ("[The factfinder is] normally entitled to make reasonable inferences from circumstantial evidence regarding all sorts of facts, including the facts necessary to find defendants guilty beyond a reasonable doubt of capital crimes.")

[18] OCGA § 16-5-21 (a) (2).

crime."[19] Although Hardin shot Hall in the leg, it can be reasonably inferred from the evidence that Edouard shared a common criminal intent with Hardin in this connection. Edouard rode with Hardin to meet Hall with the intention of robbing him. Edouard then approached Hall with Hardin, who was armed. When Hardin pressed the gun to Hall's head, Edouard said, "*We* don't want no trouble," indicating that he and Hardin were working together. Finally, after the shooting, Edouard called out to Hardin to make sure that he reentered the vehicle, and Edouard and Hardin fled the scene together. Accordingly, the evidence authorized the factfinder to find beyond a reasonable doubt that Edouard was a party to the crime of aggravated assault.[20]

2. Edouard next contends that the trial court erred by failing to merge his conviction for aggravated assault with his conviction for attempted armed robbery for sentencing purposes. The State concedes this point, and we agree.

We determine whether one crime is included in another as a

---

[19] (Punctuation omitted.) *Powell v. State*, 307 Ga. 96, 99 (1) (834 SE2d 822) (2019).

[20] See *Luke v. State*, 324 Ga. App. 531, 533-534 (2) (751 SE2d 180) (2013) ("[S]ufficient evidence supports an aggravated assault conviction even though the defendant, while present during the crime, did not verbally threaten the victim; did not hold, shoot, or supply the gun used; and claimed no advance knowledge of the crime.") (punctuation omitted); *Garcia v. State*, 290 Ga. App. 164, 165 (2) (658 SE2d 904) (2008) (affirming the appellant's aggravated assault conviction as a party to the crime despite the appellant's lack of participation in the shooting).

matter of fact by applying the required evidence test adopted . . . by our Supreme Court. The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. The important question is not the number of acts involved, or whether the crimes have overlapping elements, but whether, looking at the evidence required to prove each crime, one of the crimes was established by proof of the same or less than all the facts required to establish the commission of the other crime charged.[21]

In full, Count 1 of the indictment alleges that Edouard, as a party to the crime, committed the offense of attempted armed robbery by pointing a firearm at Hall and shooting him in the leg while demanding his property, acts which constitute a substantial step toward the commission of the crime. Count 2 of the indictment alleges that Edouard, as a party to the crime, committed the offense of aggravated assault by shooting Hall in the leg. As alleged in the indictment, both crimes arose from the same conduct — shooting Hall in the leg. And applying the required evidence test to the offenses as alleged, the aggravated assault count did not contain a fact not also contained in the attempted armed robbery count. Accordingly, the aggravated assault count should have merged into Edouard's conviction for the attempted armed robbery

---

[21] (Punctuation omitted.) *Davis v. State*, 312 Ga. App. 328, 330 (1) (718 SE2d 559) (2011). See also *Drinkard v. Walker*, 281 Ga. 211, 215-216 (636 SE2d 530) (2006).

of Hall. The trial court failed to recognize that merger and erroneously entered a separate conviction and sentence for the aggravated assault, which must be vacated.[22]

*Judgment affirmed in part, vacated in part, and case remanded. Markle and Padgett, JJ., concur.*

---

[22] See *Hood v. State*, 309 Ga. 493, 503 (4) (847 SE2d 172) (2020) (vacating aggravated assault conviction because the aggravated assault was part of the same transaction as an armed robbery for which the defendant was convicted); *Davis*, 312 Ga. App. at 330 (1) (vacating and remanding for resentencing because the trial court failed to merge an aggravated assault count into an attempted armed robbery conviction where both offenses were part of the same transaction).